**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2008 APR 22  A 10: 15

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT,
MIDDLE DISTRICT ALA

**JEFFERY BAKER JR,**

**Petitioner,**

**vs.**

**RUSSELL THOMAS,** *et, al.,*

**Respondents.,**

*
*
*
*
*
*
*
*
*
*

**2:06-CV-61-ID**

**PETITIONER'S OBJECTION TO THE**
**MAGISTRATE JUDGE RECOMMENDATION**

Comes now Petitioner, pro-se, unlearned in law, respectful, and in good faith and objects to the Findings and Recommendation of the Magistrate Judge. The Magistrate's Recommendation re-assigns the two exceptions by which Federal Review maybe granted. Cause and Prejudice and a Fundamental Miscarriage of Justice; citing *Murray v. Carrier,* 477 U. S. 478, 485, 106 S. Ct. 2639, 26244, 91 L. Ed. 2d397 (1986); *Wainwright v. Sykes,* 433, U. S. 72, 87 (1977), and *Schlup v. Delo,* 513, U.S. 298, 231 (1995), (Mag. Recom. pg. 4, and 8).Petitioner hereby objects as follows:

**CAUSE AND PREJUDICE**

According to the Magistrate's Recommendation, Petitioner "has shown cause for his failure to present his federal claim to the state courts in compliance with applicable procedural rules" but has not shown actual prejudice from the alleged violation of federal law about which he complains sufficient to overcome his procedural default." (Mag. Rec. pg. 6). Accordingly, the prejudice prong is not sufficient to overcome the default.

Respectfully, as a preliminary observation, Petitioner's duly filed application for rehearing cities the Alabama Constitution Article I Section 6 provision that grants the petitioner the right to be heard by himself and counsel or either. In the petitioner's well-considered opinion, the rehearing denial notice was disposed of by court officials to avoid petitioner's challenge in the Alabama Supreme Court. Despite the Magistrate's assessment, that, in order to establish prejudice, petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different, *Crawford v. Head*, 311 F. 3d. 1288, 1327-28 (11th Cir. 2002). It is very doubtful that the present habeas petition would have been necessary had it not been for above stated malfeasance. Petitioner's direct question and his request for advice of counsel hinge on whether the Alabama Constitution and the Alabama Rules of Criminal Procedure provide for the requested counsel. Here, the proper operation of Court administration created the condition that attempts to procedurally default the petitioner's claim. This Honorable Court is urged not to hold the state guiltless by rejecting the recommendation in whole.

The Alabama Supreme Court has consistently held that: "If a defendant voluntarily and intelligently chooses to waive his right to counsel, he should be informed by court of dangers and disadvantages of representing himself, so that record will reflect that he knows what he is doing and that he is making his choice with eyes open, *Ex parte Clemons, 720* So. 2d 985 (Ala. 1998), see also *Faretta*; In *Ex parte Arthur*, 711 So. 2d 1097 (Ala. 1997) the court said: "Defendant's abandonment of assistance of counsel must be accompanied by showing in the record that defendant made knowing and intelligent decision to forgo counsel, "Better practice, when defendant has requested to act as own cocounsel, is for trial judge to hold formal colloquy with defendant who has either

2

standby counsel or hybrid representation. More importantly, in the same case, the Court

of Criminal Appeals stated, "hybrid representation," (. . . ) "Occurs when defendant

conducts portion of trial and counsel conducts the balance, *Arthur vs. State,* 711, So. 2d

1031 (Ala. Crim. App. 1996), U.S.C. A. Const. Amend . 6. Petitioner's record, according

to the holding in *Arthur*, will not support the Court's "hybrid representation" pose. At the

very least, Petitioner's request for counsel is authorized by Alabama's Constitution and

the Rules of Criminal Procedure, Rule 6.1(b).  Additionally, Alabama Supreme Court has

original jurisdiction of cases and controversies as provided by the Constitution. The

controversy here presented was circumvented by external factors that impeded the efforts

of the petitioner to raise the issue in compliance with applicable procedural rules.

Noticeably, the Magistrate's Recommendation fails to cite the United States Middle

District Court Case *2:06CV-043-WHA*, *Baker v. Alabama Supreme Court, et, al*;

essentially, urging the U.S. District Court to declare whether petitioner has a right to due

process and equal protection of Alabama's laws.

The Recommendation asserts, Petitioner failed to present his claim for relief to

the highest State Court with jurisdiction to review the claim on direct appeal (Doc. No.

14 at 3). The Recommendation concludes, Petitioner has shown cause but has not shown

actual prejudice." (Mag. Rec. pg. 6).

Petitioner must respectfully object, through no fault of petitioner, the Alabama

Supreme Court was circumvented from addressing the issue. There is at least a

reasonable probability that the Alabama Supreme Court would up hold its prior decisions

cited above. In addition, the Alabama Constitution guarantees a criminal defendant the

Right to be heard by himself **and** counsel, **or either**. There is a reasonable probability

3

that the Alabama Supreme Court would give force and effect to the Constitution(s) and state law Rules. The Court of Criminal Appeals necessarily inferred the waiver, because petitioner never renounced his Constitutional Right by asserting a clear and unequivocal right to self-representation, and the same must not be incidental. The *Faretta* holding requires a specific abandonment of the right. Justice Stewart writing for the majority, plainly held, " a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon him when he insists that he wants to conduct his own defense, *Faretta v. California, 422 U.S. 806 (1976)*. Unlike *Faretta*, petitioner requested his constitutional counsel. Additionally, *Faretta* held: " State may, even over objection by accused, appoint a "standby counsel" to aid if and when accused requests help, and to be available to represent accused in event that termination of defendant's self-representation is necessary. Here, it is an unreasonable application of *Faretta* where the petitioner requests "standby counsel" and is denied and the state may, even over objection by accused, appoint a "standby counsel.". There is at least a reasonable probability that the Alabama Supreme Court would have upheld Faretta, when confronted with Ala. Const. Art. I § 6 and Ala. Rule Crim. Pro. Rule 6.1(b). Under petitioner's numerous request(s) for advice of counsel, the Alabama Supreme Court would likely interpret Ala. Rule Crim. Proc. Rule 6 (b) in petitioner's favor. A divided Court of Criminal Appeals wrestled with the very issue. Ironically, the opinion issued by the divided Court of Criminal Appeals, fails to answer petitioner challenge regarding Ala. Const. Art. I § 6, *Baker v. State*, 933 So. 2d. 406 (Ala. Crim App. 2005). This is especially apparent since the issue was fairly briefed in petitioner's rehearing application,

4

See also *Weakley v. State*, 721 So. 2d 235, 236 (Ala. 1998) (holding that the right to counsel at arraignment is a jurisdictional matter), *Saylor v. Sanford*, 99 F. 2d 605 (11 Cir 1938); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). More importantly, the Court of Criminal Appeals held in *Merriott v. State*, 767 So. 2d. 408 (Ala Crim. App 2000) Trial court's failure to inform pro se defendant that he had a right to withdraw his waiver of right to counsel at any time during criminal proceedings was reversible, citing U.S.C.A. Const. Amend. 6; Rule Crim Proc., Rule 6. 1 (b). In *Moody v. State*, 888, So. 2d 532 (Ala. Crim. App. 2003) the court held when defendant in a criminal case seeks to represent himself, the defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open, again citing U.S.C.A. Const. Amend. 6; Rule Crim Proc., Rule 6. 1 (b). There is a clear conflict between *Faretta*; the United States Constitution's Sixth Amendment, Alabama Rules of Criminal Procedure Rule 6.1 (b) and Alabama's Constitution Article I Section 6. The recommendation deprives petitioner of Constitutional and State law Rights in violation of *Faretta*; the Sixth, and Fourteenth Amendment to the Unites States Constitution.

Further, petitioner filed a document in this Honorable Court designated; AFFIDAVIT IN SUPPORT OF REPLY dated April 28, 2006. Petitioner's affidavit states notice of the rehearing denial was intentionally misappropriated by Court officials to prevent Alabama Supreme Court's review. In addition, the petitioner's petition and his amended petition contain a verified statement attesting to a conscious design. The sworn statements of petitioner remain undisputed by the Respondent(s). Petitioner maintains his rehearing denial was deliberately misappropriated by court officials to prevent a Supreme

Court review. It stands to reason, prejudice followed because the Alabama Supreme Court was denied the opportunity to redress the issue. Petitioner maintains and the totality of circumstances dictates that there is a reasonable probability, if confronted with the issue; the Alabama Supreme Court would side with Petitioner.

Petitioner must respectfully object to the Magistrate's footnote(s) regarding the "independent review finds the appellate court conclusion under the totality of circumstances, petitioner made a knowing, voluntary, and intelligent decision to waive his right to assistance of counsel reflect an objectively reasonable application of *Faretta*, 422 U.S. at 835 also *North Carolina v. Butler*, 441 U.S.369, 374, 374-76 (1979) (Mag. Recom. Fn1 pg. 7). The *Butler* court concerned itself with waiver of counsel under North Carolina's custodial interrogation rules, holding, "explicit statement of waiver is not invariably necessary to support finding that defendant waived right to remain silent or right to counsel guaranteed by *Miranda* and the "Fourteenth Amendment." In petitioner's case, the Alabama Rules of Criminal Procedure, Rule 6.1(b) is mandatory. "And if a defendant properly preserves and presents an argument on appeal that the trial court faltered in its application of the mandatory provisions of Rule 6.1(b) he is entitled to relief, *See, e.g., Ex parte King*, 797 So. 2d 1191 (Ala. 2001). Additionally, the United States Supreme Court held in *Faretta v. California, 422 U. S. 806 (1975)* "A defendant should be made aware of the dangers and disadvantages of self-representation. Here, petitioner never made a clear and unequivocal request to conduct his own defense, nor is there a clear and unequivocal assertion for the right of self-representation. As such, the magistrate's "independent review is contrary to or an unreasonable application of federal law, *Faretta v. California,* 422 U. S. 806 (1975)*; North Carolina v. Butler* 441 U.S.369,

6

374, 374-76 (1979). After that, the recommendation references *Nelson* failure to hold *Farretta* hearing is not error as a matter of law; if trial record shows defendant knowingly and voluntarily elected to represent himself, *Nelson v. Alabama*, 292, F. 3d 1291 (11th Cir. 2002). Petitioner object, *Nelson* , prior to a new sentencing hearing sent a letter to judge expressing his wish to re-present himself at the re-sentencing. Additionally, *Nelson* sentencing judge had also presided over a *Faretta* hearing in 1987 and had found Nelson knowingly and intelligently asserted his right to self-representation. The *Nelson* judge also made an implicit finding that *Nelson* adequately understood the disadvantages and consequences of self-representation. Furthermore, *Nelson* had not one but two "stand-by counsels."

Unlike the cases cited against the petitioner's federal claim, at the conclusion of petitioner's *Faretta* dialog the prosecution had presented the court with a proposed order, the following transpired:

> **THE COURT**: Okay; all right. (Prosecutor) anything?
>
> **PROSECUTOR:** Judge, may I approach the bench? I have noticed Mr. Baker with it and also a copy in the file. For the convenience of the Court, there is a copy of a proposed order that I think addresses the issue brought forth in *Faretta* and the two recent Alabama cases that addressed the same issue.
>
> **COURT:** You have given Mr. Baker one?
>
> **Prosecutor:** I have previously given him one.
>
> **Mr. Baker:** I have received it, your Honor.
>
> **COURT:** Okay, What is the State's position regarding a, I don't know, sit-in-attorney, if you will?
>
> **PROSECUTOR:** Judge, that, if you-he has a choice of going the route of self-representation. And on a case of the level of these two misdemeanors, that is not, it is not required that the State give a sit-in-attorney when he has asked to represent himself and is certainly capable of representing himself.

7

**MR. BAKER**: on that same issue, Your Honor, if I may be allowed to speak?

**THE COURT**: Are you through, [prosecutor]?

**[Prosecutor]**: Yes, sir.

**THE COURT**: Yes, Mr. Baker

**MR. BAKER**: I am, If I may be allowed to speak; the position of the State in other cases that I am aware of, that when a pro se individual, who is unlearned in the law asks for a sit-in-attorney, it is granted with the express stipulation tha the attorney and the pro-se individual not be questioning the witness at the same time or if one is questioning, the other will not or something to that effect. And I think that is the way it has been in caselaw that I have discovered that has been addressed by it.

**THE COURT**: Do you want to present a case to me?

**MR. BAKER**: No, sir. You can rule on it. It is up to you, I will make an objection, and we can take it up on appeal." (R.R. at pg. 20-23)

There is no indication whatsoever that the court ever ruled on the prosecutor's proposed *Faretta* order or Petitioner's request for "sit-in-attorney." The Record here shows, petitioner properly preserved and presented the argument on appeal that the trial court faltered in its application of the mandatory provisions of *Faretta* and Alabama Rule 6.1(b), accordingly, Petitioner is entitled to relief, *Ex arte King*, 797 So. 2d 1191 (Ala. 2001). Additionally, the Alabama Rules of Criminal Procedure Rule 6.1(b) provide: (. . . ) "At the time of accepting a defendant's waiver of the right to counsel, the court **SHALL** inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceeding. The record here shows just the opposite occurred:

**THE COURT**: It is not an attorney of your choosing. Are you requesting this Court appoint an attorney?

**MR. BAKER**: Not at this time, Your Honor.

> **THE COURT**: Well, there is not going to be another time, So, either we are going forward with the trial of these cases or we are going to stop and I am going to appoint an attorney for you. If you are requesting it.

> **MR. BAKER**: Well, I will request, Your Honor, to have a sitting attorney, but I am planning to represent myself before the jury. That is what I plan to do.

The trial court faltered in its application of the mandatory provisions of Rule 6.1(b). It cannot reasonably be maintained, that the petitioner knowingly, intelligently, or voluntarily waived his right counsel and at the same time, state, ( . . . ) "I will make an objection, and we can take it up on appeal." (R.R. at pg. 20-23). Stated another way, why would a knowingly, intelligently, and voluntarily person object and appeal something he' "unequivocally" giving away? The point is this, if the petitioner wanted to renounce his counsel, why would he suggest an objection and appeal on the issue. Clearly, such an objection necessarily works against the recommendation and the state court's position. Furthermore, the court failed to issue his ruling on the subject of the proposed order and petitioner's request for counsel. The trial court faltered in its mandatory application of *Faretta*, and Alabama Rule 6.1(b). At the very least, the court was required to announce his findings and according to established federal law, state the dangers and disadvantages of self-representation. Contrary to the magistrate's finding, that, "petitioner did not unwitting stumble down the path of self-representation" . . . . Rather, he sought hybrid form of representation of his choosing; . . . and petitioner knowingly, voluntarily, and intelligently chose to waive his right to counsel and to instead proceed pro se," The Alabama Constitution provides criminal defendants the right to be heard by himself and with counsel or either. Indeed, as the magistrate suggests, petitioner did not unwittingly stumble the path, but, rather, pushed. The Alabama Rules of criminal Procedure Rule 6.1 (b) provides advice of counsel during any stage of criminal proceedings. Petitioner's

request for standby Counsel is sanctioned by federal law; and Alabama's Constitution and Rules. The Magistrate's finding will not withstand scrutiny. It appears, the cases cited by magistrate's were all afforded some type advice of counsel, albeit " stand-by, or hybrid. They had counsel appointed or retained counsel at some point during their trials. The central question here presented remains unanswered, specifically, did your petitioner Clearly and unequivocally assert any such Right to Self-Representation; did petitioner ever renounce his desire for the advice of counsel. The court, it appears, is required to do more than what was done here.

Moreover, at what stage, in the criminal proceedings is the criminal defendant entitled counsel. According the Fourteenth Amendment, criminal defendants are entitled counsel at the first adversarial proceeding(s). The Record here shows the numerous motion hearings, "adversarial proceeding(s)," held prior the so-called *Faretta* hearing (R.R. 1-19). Additionally, the Record clearly shows the numerous lawyers participating in the petitioner's trial including U. S. Attorney, the Honorable: R. Randolph Neeley, Pike County was represented by attorney Alan Jones, and the City of Troy was represented by Mr. Richard F. Calhoun (R. R. pg. 29-38). Petitioner believes he has a basic right to representation at the first adversarial proceeding. In this case, September 4, 2003 at a so-called status conference which was stealthily converted into a motion to dismiss hearing? Because the assistance of counsel is basic to the adversary system of criminal justice, they are part of "due process of law" that is guaranteed by Fourteenth Amendment to defendants in criminal courts of the States. Clearly, petitioner did not receive a full and fair evidentiary hearing in a state court either at the time of trial or in a collateral proceeding.

Furthermore, Petitioner's OBJECTION TO THE COURT'S COMMON PRACTICE is cataloged in the Clerk's Record at page 555 (C.R. 555). The said document shows a concerted effort for petitioner to surrender Constitutional and state law rights out side the written record. The Record also shows the court order setting the motion to dismiss complaint for September 4, 2003, (C. R. 548), petitioner received the order at 3:45 the afternoon prior to the hearing the next day. In reality, the hearing was used as a scare tactic to force Petitioner's guilty plea. Additionally, the prosecution's motion to dismiss petitioner's appeal was the only topic of the hearing; a "adversarial proceeding (C.R. 505-507, see also C.R. 542).

Petitioner's object to the issue of bias, it is not whether the judge was impartial in fact. It is simply whether another not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances. Disqualification is required if a reasonable person knowing all the circumstances, would harbor doubts about his impartiality. Interestingly, the record shows the STATE'S RESONSE TO DEFENDANT'S OBJECTION TO THE COURT'S COMMON PRACTICE, (C. R. 559):" The State's response above cited, does not deny the court's partiality. In another case involving Petitioner, Houston County Case *Baker et. al. vs. Newman & Newman* CV-97-509-A, Petitioner's trial judge disqualified himself. The case originated in a Pike County Case *Baker et. al vs. Newman & Newman* DV-97-43, there is a clear nexus by which the petitioner knowing all the circumstances, would harbor doubts about the Judge's impartiality. Moreover, the reasons petitioner stated for counsel matters not, because all criminal defendants are entitled advice of counsel when requested.

11

Lastly, "where the facts are in dispute, the federal court in a habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court either at the time of the trial or in a collateral proceeding," *Townsend v. Sain,* 372 U. S. 293, 319 (1963), Habeas Corpus Rule 8.

## MISCRRIAGE OF JUSTICE EXCEPTION RULE

Petitioner respectfully objects to the recommendation that, "petitioner fails to make the requisite showing for miscarriage of justice exception. Essentially, the Recommendation advises, petitioner was found guilty by duly empaneled jury and as such, petitioner's actions constituted the commission of the charged offense.

First, the Magistrate cites *Schlup v. Delo,* 513, U.S. 298, 231 (1995), (Mag. Recom. pg. 8), as the "gateway" through which the petitioner must pass before this Honorable Court will consider the Constitutional claim. However, the *Schlup* Court was dealing with an "abusive or successive petition," there is no such suggestion here. If, however, petitioner fails cause and prejudice he may nonetheless, as an alternative, rely on the miscarriage of justice exception announced in *Schlup*. To satisfy the *Schlup* exception, petitioner must show actual innocence. In so doing, he must present a substantial claim that a constitutional error caused the conviction of an innocent person. To be credible, such claim requires the petitioner to support the allegations of Constitutional error with new reliable evidence. Trustworthy eyewitness testimony may be considered as new and reliable evidence, here.

First, at the district court trial, petitioner was never afforded a *Faretta* hearing. It is the lack of counsel, coupled with the absence of a knowing and intelligent waiver thereof, that acts to deny the defendant of counsel and to jurisdictionally bar the

12

prosecution. Hence, this Court must consider whether petitioner was entitled a Sixth Amendment Right at his first trial in the Pike County District Court and whether that conviction jurisdictionally barred the subsequent conviction. The Reporters Record (R. R. pg. 18) shows the district attorney stating, "We didn't have one of those in the District Court. Petitioner agrees, he was denied his Sixth Amendment Right in the District Court of Pike County. Such conviction there may not stand under clearly established federal law.

The Record shows that the petitioner subpoenaed Pike County Sheriff Russell Thomas. Petitioner had personal knowledge of Sheriff Thomas participating in the cook-off. There was no physical evidence introduced to support the purported damage. The property purported was a steak with an estimated bulk value at $2.50. The actual price of the property or its classification is unknown, however, the price of the complete meal was stated to be $10.00, including dessert(s) and drinks. Testimonial evidence was the only basis by which the petitioner was found guilty. There were no pictures or any other tangible evidence presented at petitioner's trial. Here, Sheriff Thomas failed to appear under compulsory process. After issuing the Sheriff subpoena, the court failed to compel compulsory attendance, RR pg. 4-12. Likewise, District Attorney, Mark E. Fuller, failed compulsory attendance, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. In addition, Rebecca H. Fowee failed compulsory process. These witnesses were central to the dispute the prosecution and may have prevented the trial altogether, (see motion hearings RR 1-19). These credible witnesses was denied at the petitioner's trial. At the very least, Sheriff Thomas, Mrs. Fowee, and Mr. Fuller would have offered character witness and proved officer Bob Williams actions on the

13

particular occasion was in conformity with his habit or routine practice as it regards fabricated evidence; previously complained of, *Wyatt v. State*, 419 So. 2d 277 (Ala. Crim. App. 1982), Ala. Rules of Evidence, Rule 406. Because petitioner was denied compulsory process for obtaining trustworthy eyewitnesses, a substantial habeas claim exists that a constitutional error caused petitioner's conviction, (R. R. 4-12). Had petitioner been afforded compulsory process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, it is more likely than not that no reasonable juror would have found the petitioner guilty. Based on an independent review of the trial transcript beginning at page one through page nineteenth, (R. R. 1-19) the courts determination of the facts in light of the evidence presented is an unreasonable application of federal law.

**Please take Judicial Notice:** Petitioner hereby adopts and incorporates his sworn affidavit (C. R. 561-567), herein as if fully reprinted. The Alabama Constitution of 1901 Article I § 6; the United States Constitution Sixth, and Fourteenth Amendments are substantial constitutional provisions. Without advice of constitutionally guaranteed counsel, petitioner was placed in a position where he could not, or unaware he could testify at his trial. The charge against petitioner was undisputed by the petitioner or trustworthy eyewitnesses above named. Petitioner was found guilty by the duly empaneled jury. Had petitioner been afforded his constitutionally protections, it is more likely than not that, no reasonable juror would have convicted petitioner under the circumstance existing giving rise to the charge. The Record shows that the "duly empaneled jury" had major question regarding the government employed witnesses untruthfulness, (R. R. pg. 404-407). It is noted that all witnesses testifying at the

14

petitioner's trial were employed either by the state of Alabama or Pike County. It is more likely than not that, no reasonable juror would have convicted petitioner had petitioner been afford his trustworthy eyewitnesses above named and duly subpoenaed under compulsory process pursuant to the Alabama Constitution 1901 Article I § 6; the Sixth and Fourteenth Amendments to the United States Constitution.

No reasonable juror would have found petitioner guilty under applicable state law. Petitioner's Affidavit is undisputed, (C. R. 561-567), the petitioner and Deputy Bob Williamson were engaged in an altercation when the property was purportedly damaged, again, a steak of unknown value or class. Mr. Williamson is the only person that testified he saw the property damage, a steak, "broke into three pieces" (C. R. 547). All the elements of charged offense must be proved beyond a reasonable doubt, Ala. Code 13A-7-23. The elements necessary to establish criminal mischief in the third degree, are: (1) that the property was actually damaged; (2) the defendant intentionally damaged the property; (3) the defendant had no right to damage the property or any reasonable ground to believe that he had such right, four and five are omitted. Petitioner was charged by a complaint issued by "purported" property owner, Mrs. Tyner based on Mr. Williamson sworn deposition. Since there was no physical or tangible evidence presented at trial, I suppose Mr. Williamson's testimony satisfy the first element.  The second element requires a showing that the defendant's culpable mental state was to intentionally damage the property. In that, it must be shown petitioner's purpose was to cause that result or engage in that conduct which produces damage to the property.  However, since petitioner was engaged in a altercation when the property was damaged, must, as a matter of law, negate any culpable mental state; (3) the third element requires a showing that the

15

defendant had no right to damage the property and that he no reasonable ground to believe that he had such right. Petitioner was invited to the party, he was offered food, (R.R. 174) he had every reasonable ground to believe he had a right to food, Consequently, a reasonable mistaken belief, negates petitioner's culpable mental state. The standard for determining whether habeas petitioner is actually innocent . . . is whether petitioner showed that no reasonable juror would have found him eligible for death penalty under applicable state law on elements of crime itself and existence of aggravating circumstances, *Sawyer v. Whitley,* 505 U. S. 333, 112 S.Ct. 2514, 120 L. Ed. 2d (1992). According to *Jackson v. Virginia et. al.,*"A federal habeas corpus court must consider not whether there was any evidence to support a state court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt." This Honorable Court must exercise sound discretion here, recognizing the place, purported damage, and manner in which the incident occurred. The fact is, petitioner sought criminal charges, but the plaintiff countered with damage to the steak. The charge against petitioner here perfected is disgraceful and taints the criminal Justice system of Alabama, A clear miscarriage of justice.

**Petitioner's respectfully request the Honorable Court take judicial notice of the *following*,** petitioner's companion case before this Honorable Magistrate Judge, case no. 2:06cv201-MHT, *Baker vs. Thomas, et, al.,* the transcript is hereby adopted and incorporated (portions thereof herein below indicated) of the said case above referenced herein as if fully presented here. According to testimony abbduced at petitioner's re-trial, herein relevant, on cross and re-cross, officer Bob Williams claims to have witnessed the purported damages, recants his testimony as follows:

16

" I don't think I testified I gently lifted his arm. I don't remember my exact words, but I said I pushed his arm". . . (R.84-102, 107-112).

Testimony shows the following occurred prior to petitioner's reaction to the battery to his persons:

Q.    "And according to your statement, after you pushed Mr. Baker's arm the second time, he said, "Don't shove me," and that's when he shoved you back---

A.    Yeah.

Q.    --or pushed you back?

A.    I'm not sure if he said don't shove me or don't touch me. . .

Q. "And you leave no room for the possibility that Mr. Baker was feeling threatened by you pushing him"

A.    I have no idea what Mr. Baker was feeling.

Q.    But you can't exclude the possibility, right?

A.    I can't tell you what he was feeling. (R. 92).

**Petitioner testified**:

Q.    And when you walked over to the grill, what did you see?

A.    I saw sausage, steaks, looked like pork chops, and maybe even hamburgers on there.

Q.    And at that point, what did you do?

A.    I just reached for the tools, the fork or the tools, whatever it was. And from behind---I was kind of sideways, and from behind, Mr. Williamson assaulted me.

Q.    By that, what do you mean?

A.    He grabbed me and tried to manhandle me.

As petitioner's examination continued, "when you went to that grill, was it your intention to have any dealings with Bob Williamson:

17

A.  "None whatsoever. I was under the impression that I was welcome to have the food. I was under the impression that I could participate fully, but for Mr. Dennis Riley and Mr. Bob Williamson aggression.

Q.  Okay. This steak that you say you were reaching for, did you at that time know that steak belonged to someone else?

A.  No, Sir. No, Sir.

Q.  Mr. Williamson said you can't have that steak or don't touch my grill, did you believe he had the authority to tell you that?

A.  I didn't believe he had the authority to tell me that; furthermore, he did not tell me that. He told me, after he had initiated physical contact with me, not to touch the grill. I assured him after having him—getting a loose from his grasp, I wasn't going to touch the grill, I just wanted the food. And he again initiated physical contact on my persons. I nudged Mr. Williamson away from me, and he rushed back up on me. In the process, of that, the steak fell on the ground. And that's all it was. I thought the issue was dead. And they come up with this complaint.

Q.  At the time when you say Mr. Williamson grabbed you, did you feel threatened by that?

A.  Yes, sir.

Q.  Did you feel like—what did that make you feel in regard to your personal safety?

A.  I felt like—I felt like I was in imminent harm or threat of imminent harm from the way Mr. Williamson and the way Mr. Riley had already treated me and the way he looked like stalking me, (R. 227).

Contrary to the State's Bob Williams, other steaks remained on the grill. Mrs. Linda Jeater was the functions coordinator(R. 183). She testified other food was on the grill, she states: "other than this piece of meat – other than the piece of meat you said you saw was there any other meat on the grill, (. . .) She said, "Yes, Because I had a steak on there' (R 185). When asked about the grill, she said, "we use the grill. (R. 186). In an

18

attempt to have her to recant, the prosecution pressed the question, Mrs. Jeater maintained, "I know my steak was still on the grill (R. 188) when pressed further, she testified: Oh, it was on the grill. I hadn't got my steak yet.( R. R 189). "Where the facts are in dispute, the federal court in a habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court either at the time of the trial or in a collateral proceeding," _Townsend v. Sain,_ 372 U. S. 293, 319 (1963), Accordingly, petitioner's conviction is the result of an unreasonable determination of the facts in light of the evidence presented to the state courts. It is more likely than not that, no reasonable juror would have convicted the petitioner had the testimonial evidence been disputed.        Petitioner conviction is an unreasonable determination of the facts in light of the evidence presented to the state court, as such; petitioner is entitled to habeas relief. Accordingly, a miscarriage of justice resulted in the conviction of the innocent petitioner.

## CONCLUSION

Petitioner is entitled federal review if he did not receive a full and fair evidentiary hearing in a state court either at the time of the trial or in a collateral proceeding. It remain undisputed, Court officials misappropriated petitioner's rehearing denial notice. The magistrate's recommendation indicate petitioner has shown cause for his failure to abide by the state's procedural rules, even so, failed to sufficiently overcome cause "and" the prejudice. Despite the assertion, petitioner has shown that there is at least a reasonable probability that butfor the external interference; the result of the proceeding would be different. Alternatively, The trial court was jurisdictionally barred because petitioner was denied assistance of counsel in the first instance in the district court for Pike County in

violation of his Sixth and Fourteenth Amendment. Additionally, the necessary elements required to maintain petitioner's conviction are suspect or voided for petitioner's lack of mental culpability. Petitioner was denied compulsory processes in obtaining wittiness in his favor; hence, the charge went undisputed resulting in constitutional error causing the innocent petitioner's conviction. It is so maintained and respectfully submitted in good faith.

Done this the 21st day of April 2008.

Jeffery Baker Jr., Petitioner
1357 County Road 3348
Brundidge, Alabama 36010
334-735-3548

## CERTIFICATE OF SERVICE

I hereby certify that I have this day, April 21, 2008 served the forgoing Objection to the

Magistrate's Recommendation on the following by United States mail with postage pre-

paid and affixed thereto and properly addressed as follows:


Mr. Cecil G. Brendle, Jr.,
Assistance Attorney General
11 South Union Street
Montgomery, Alabama 36130

Jeffery Baker Jr,

21

Mr. Jeffery Baker Jr.,
1357 County Road 3348
Brundidge, Alabama 36010

 

U.S. P
PAI
BRUNDIDG
360
APR 21
AMOUN

$1.
00053

0000          36101

Ms. Debra P. Hackett, Clerk
U. S. District Court
P. O. Box 711
Montgomery, Alabama 36101-0711